UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                       :

KATHRYN GRACE JORDAN,                :

                             :

                     Plaintiff,       :         13 Civ. 9015 (PAE)

                             :

          -v-                  :         OPINION & ORDER

                             :

CHASE MANHATTAN BANK, CHASE BANK USA    :
NATIONAL ASSOCIATION, JP MORGAN CHASE &   :
COMPANY AKA JP MORGAN ACQUISITION TRUST :
2007—JP MORGAN ACQUISITION TRUST 2007–   :
CH3;JPMMAC 2007–CH3), DEUTCH BANK     :
NATIONAL TRUST COMPANY, TRUSTEE SHUTTS & :
BOWEN, CHASE HOME FINANCE (US AND     :
FLORIDA), DEUTSCHE BANK AG,         :

                             :

                   Defendants.    :

                             :
----------------------------------------------------------------------- X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Kathryn Grace Jordan, proceeding *pro se*, brings this action against defendants

Chase Manhattan Bank ("Chase"), Chase Bank USA National Association, JP Morgan Chase &

Co. ("JP Morgan"), JP Morgan Acquisition Trust 2007—CH3;JPMMAC 2007—CH3, and

Chase Home Finance (collectively, the "Chase Defendants"); Deutsche Bank AG ("Deutsche

Bank"); Deutsche Bank National Trust Company; and Shutts & Bowen, a law firm in Miami,

Florida.  Jordan brings numerous claims arising out of the 2006 refinancing of her mortgage on a

property in Florida, the 2009 foreclosure of that property, and a 2012 garnishment action brought

against Jordan in Florida state court.  Defendants move to dismiss the Amended Complaint,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted.  For the reasons that

follow, defendants' motion is granted.

I.      **Background**

A.      **Facts**[1]

Jordan held a mortgage, originated by Chase Home Finance, on a residence in Palm
Beach, Florida (the "Florida property").  Am. Compl. at 2–3.  At some point in 2006, Jordan
refinanced the mortgage with Chase.  *Id.* at 2.  Chase verbally promised to maintain the same
loan term in the refinanced mortgage as in the original mortgage, at a loan rate competitive with
other banks in the area.  *Id.* at 3.  Jordan alleges that she relied on these representations in
moving forward with the refinancing; however, before the transaction was completed, the "Title
Agent had 'swapped' out the loan for a shorter term ARM [adjustable-rate mortgage]."  *Id.* at 3–
4.  Jordan informed Chase of the discrepancy between her understanding of the loan term and
what was represented by the loan documents, and received a "promise to modify the loan
documents" from Chase; however, Jordan later "realized that Chase had breached its promise to
her regarding the rate and term" of the refinanced mortgage.  *Id.* at 4.

At some point after the refinancing, Jordan requested a modification of her mortgage, and
was denied.  *Id.*  According to Jordan, Chase, Deutsche Bank, and an attorney representing the
condominium in which the Florida property was situated, colluded "in a scheme to force [Jordan]
out of her property."  *Id.* at 4–5.  Although Jordan retained counsel to aid in her attempt to
renegotiate the mortgage, the Florida property was ultimately foreclosed upon in 2009.  *Id.* at 6.
Jordan states that Deutsche Bank commenced the foreclosure, which was concluded by Chase
Home Finance.  *Id.* at 2.  As a result, she "had to endure years of housing instability and inferior
housing due to the credit impact of the foreclosure."  *Id.* at 6.  Chase also dissolved one of

---

[1] The Court's account of the underlying facts in this case is drawn from the Amended Complaint,
Dkt. 21 ("Am. Compl.").  For the purpose of resolving the motion to dismiss, the Court assumes
all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See*
*Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Jordan's lines of credit without notice, charged her fees and penalties, and generally "[t]reat[ed] [her] as an inferior customer." *Id.* at 13–14.

On January 19, 2012, a garnishment action was commenced against Jordan in Florida state court, apparently to collect an award of attorney's fees granted to the opposing party in an earlier *pro se* suit filed by Jordan against the managers of the Florida property. *Id.* at 7. Jordan claims that the award of attorney's fees was the product of "'Case Fixing'" between the Florida state court judges and the opposing attorneys, as well as a "systematic form of Discrimination against not only Pro Se litigants but the Disabled." *Id.* Jordan alleges that federal and state law required Chase, as garnishee, to refrain from freezing funds in her bank account that represented "exempt federal benefit payments," *id.* at 7–8 (internal quotation marks omitted); however, Chase "refused to escrow" the funds Jordan claims were exempt from garnishment, such that she had no access to those funds, and was unable to "buy food, medication, pay for housing, and travel to her physicians," *id.* at 8. In the course of the garnishment proceedings, Jordan alleges, "the Court made increasingly abusive invasions into [Jordan's] financial privacy," and an attorney from Shutts & Bowen, representing Chase, along with an attorney for the judgment creditor, engaged in "collusive threats and schemes . . . to try to gain illicit access to [Jordan's] Chase assets." *Id.* at 9.

Jordan further claims that Chase "expressed concerns and biases about the Refi application of [Jordan] especially the nature of her Disability Income, initially refusing the application" as a result of "irrational fears about the reliability of [Jordan's] income as a disabled person." *Id.* at 15. Jordan alleges that, presumably during the time when she was attempting to

modify the mortgage, "Chase never disclosed any HAMP programs" to her,[2] despite being

"obligated under the FHA, ECOA, CPA, and other statutes" to disclose "all options available to

her particularly given her Disability status." *Id.* at 16.  Jordan alleges that Chase "failed to do so

due to their discriminatory animus toward her as a Disabled person." *Id.*  Jordan claims that

Chase was "legally obligated . . . to offer [Jordan] the best program available, and to consider her

application equally to Non-Disabled persons," but instead prejudged the situation "as evidenced

by the Deut[s]che [B]ank early 'booking' as a foreclosed loan, the pressure on [Jordan] to leave

her home and to accept a less than fair offer, and the belated uncompetitive offers." *Id.* at 17.

According to Jordan, "[i]t is apparent from the long patter[n] of facts, that Chase was excessively

anxious about [Jordan] as a Disabled person," *id.*, and Chase's failure to follow the law regarding

the garnishment of exempt funds "clearly was related to Chase's long biases against [Jordan] as a

disabled person," *id.* at 19.

### B.     Procedural History

On December 19, 2013, Jordan filed her initial complaint.  Dkt. 1.  On January 9, 2014,

defendants filed a motion to dismiss for lack of jurisdiction, as well as a memorandum of law

and declaration in support of this motion.  Dkt. 5–7.  On March 26, 2014, after receiving several

extensions, Jordan filed her Amended Complaint, Dkt. 21.  The same day, Jordan filed a

document styled an affidavit in support of the Amended Complaint.  Dkt. 20.  The Amended

Complaint consists of six "counts," a number of which entail multiple parts, or, in Jordan's

prose, "acts," and some of which appear to invoke multiple statutes or common-law causes of

action.  Specifically:

---

[2]As discussed *infra*, HAMP is a U.S. Department of the Treasury program codified within the
Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201–61.

Count One alleges breach of contract and bad faith in connection with defendants' alleged failure to refinance Jordan's mortgage at the rate and duration she claims were promised, and the alleged collusion that led to Jordan's foreclosure.  *Id.* at 3–5.  Count One also claims that defendants failed to put in escrow and release funds during garnishment, in violation of (1) § 407 of the Social Security Act ("SSA"), 42 U.S.C. § 407, and its implementing regulations, 31 C.F.R. § 212 *et seq.*; (2) the Consumer Credit Protection Act ("CCPA"), specifically, the restrictions on garnishment contained in 15 U.S.C. § 1673[3]; and (3) New York and Florida statutory law.  *Id.* at 7–8.  Count One also alleges collusion between the Chase defendants and the judgment creditor. *Id.* at 12–13.  Finally, Count One alleges that defendants' acts after the foreclosure—including closure of a line of credit, and the assessment of fees and penalties—amounted to a breach of contract and bad faith.  *Id.* at 13–14.

Count Two alleges, in connection with the refinancing of Jordan's mortgage, the foreclosure of the Florida property and the ensuing developments relating to Jordan's retail banking accounts, and the garnishment action, discrimination by the defendants in violation of several Florida statutes; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"); and the CCPA, particularly, the Equal Credit Opportunity subchapter, 15 U.S.C. § 1691.  *Id.* at 14–17, 19, 24, 26.

Counts Three through Six allege, respectively, violations of four Florida laws: those against coercion, fraudulent misrepresentation, negligent misrepresentation, and fraud in the inducement.  *Id.* at 26–35.  These claims arise from the same actions that underlie Counts One and Two.  *Id.*

---

[3] In light of the Court's duty "to construe pro se complaint[s] liberally," *Harris*, 572 F.3d at 72, the Court reads this count of the Amended Complaint, which alleges violations of the "Federal Income Credit Protection Act," to refer to the Consumer Credit Protection Act.

In the Amended Complaint, Jordan seeks "[f]ull restitution . . . of the replacement value of the lost property," amounting to $1,265,000. *Id.* at 36.  She also seeks all direct and indirect costs and expenses incurred by her in relation to the refinancing, foreclosure, and garnishment action, as well as "[a]ll Tort like damages" deriving from those events. *Id.* at 36–37.

On April 17, 2014, defendants filed a motion to dismiss the Amended Complaint, Dkt. 29, as well as a memorandum of law, Dkt. 30 ("Def. Br."), and a declaration in support of that motion, Dkt. 31 ("Blaine Decl.").  Defendants argue that the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction, on the ground that both Jordan and one of the defendants, JP Morgan Chase & Co., reside in New York, and thus there is no diversity of citizenship.  Def. Br. at 2.  Defendants do not perceive Jordan to be raising claims under federal law, which would enable her to invoke the Court's federal question jurisdiction.  In the alternative, defendants argue that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *Id.*  On May 21, 2014, Jordan filed an opposition to the motion to dismiss.  Dkt. 38 ("Pl. Br.").  On May 27, 2014, defendants replied.  Dkt. 41 ("Def. Reply Br.").

## II.     Applicable Legal Standards

### A.     Rule 12(b)(1)

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Zahl v. Kosovsky*, No. 08 Civ. 8308 (LTS) (THK), 2011 WL 779784, at *4 (S.D.N.Y. Mar. 3, 2011) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).  Once subject matter jurisdiction is challenged, the plaintiff "has the burden of proving by a preponderance of

the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In analyzing whether subject matter jurisdiction exists, a district court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113.

    **B.**    **Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

District courts are "obligated to construe *pro se* complaint[s] liberally," *Harris*, 572 F.3d at 72, interpreting them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  *Pro se* status "does not

exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

## III.   Discussion

There are two principal sources of federal subject matter jurisdiction: (1) diversity jurisdiction, which exists when a lawsuit is between parties who are citizens of different states and exceeds the required jurisdictional amount, currently $75,000, 28 U.S.C. § 1332; and (2) federal question jurisdiction, which exists where a plaintiff has pleaded a colorable claim "arising under" the Constitution or laws of the United States, *id.* § 1331. *See* U.S. Const. art. III, § 2; *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000). Here, the Amended Complaint asserts diversity jurisdiction, Am. Compl. at 3; and alleges violations of federal law, *see id.* at 14–15. The Court considers these potential bases for jurisdiction in turn.

### A.   The Court Lacks Diversity Jurisdiction over this Case

Under 28 U.S.C. § 1332, "diversity jurisdiction exists over civil actions (1) between 'citizens of different States' and (2) between 'citizens of a State and citizens or subjects of a foreign state.'" *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (quoting 28 U.S.C. § 1332). Diversity jurisdiction "is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Id.* "Therefore, in a case with multiple defendants, if a single defendant is from the same state as the plaintiff, the district court loses diversity jurisdiction over the entire action." *Phoenix Four, Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205, 212 (S.D.N.Y. 2006) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)).

In this case, diversity jurisdiction is clearly lacking, because both JP Morgan Chase & Co. and Jordan are citizens of New York. For the purposes of determining whether there is

diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The principal place of business of a corporation is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," and "in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  JPMorgan Chase & Co. is incorporated in Delaware, and has its principal executive office at 270 Park Ave., New York, NY 10017.  *See* Blaine Decl. ¶ 2; *see also* Blaine Decl. Ex. A (New York Department of State business entity record showing same).  Thus, JPMorgan Chase & Co. is a citizen of both New York and Delaware for diversity purposes.

"An individual's citizenship, within the meaning of the diversity statute, is determined by h[er] domicile."  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  Jordan has resided in New York from 2009 to the present.  *See* Am. Compl. at 3.  Accordingly, she is clearly domiciled in—and thus is a citizen of—New York.  The Court, therefore, does not have diversity jurisdiction over this case.  *See Herrick*, 251 F.3d at 322 (diversity jurisdiction "available only when all adverse parties to a litigation are completely diverse in their citizenships").

### B.       The Court Lacks Federal Question Jurisdiction

District courts also "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Although Jordan initially asserted only diversity jurisdiction, *see* Am. Compl. at 3, in her opposition brief she claims jurisdiction under § 1331, Pl. Br. ¶ 15.

Defendants argue that Jordan may not invoke federal question jurisdiction, because she failed explicitly to assert it in her Amended Complaint.  Def. Reply Br. at 2.  But, contrary to defendants' claim, the case on which they rely, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), does not require a complaint to use the express terms "federal question jurisdiction" to invoke such jurisdiction.  *Caterpillar* requires only that a federal question be "presented on the face of the plaintiff's properly pleaded complaint."  *Id*.

Reading the Amended Complaint liberally, as is appropriate in the case of a *pro se* plaintiff such as Jordan, the Court finds that it does fairly claim violations of federal law. Specifically, Jordan appears to allege that federal law was violated in connection with two categories of defendants' conduct:  (1) their alleged failure to release funds that were allegedly exempt from garnishment; and (2) their alleged discrimination against Jordan during the refinancing, foreclosure, and garnishment proceedings.  The Court, accordingly, addresses whether the facts alleged by Jordan state a claim under the potentially applicable federal laws.

### 1.    Jordan's Claims of Improper Garnishment

Read liberally, the Amended Complaint alleges that, in connection with the 2012 garnishment action, the Chase Defendants froze Jordan's federal benefit payments that were exempt from garnishment, in violation of § 407 of the SSA and its implementing regulations, and in violation of § 1673 of the CCPA.  *See* Am. Compl. at 6–8; *supra* n.3.  But there is no private right of action under either statute.  Accordingly, Jordan cannot state a claim for purported violations of those statutes.

"'The question of the existence of a statutory cause of action is, of course, one of statutory construction.'"  *Conboy v. AT&T Corp.*, 241 F.3d 242, 252 (2d Cir. 2001) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)).  Where a statute does not explicitly

provide for a private right of action, "we begin with the presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).  The Supreme Court has set out "a four-factor test to determine whether a federal statute creates an implied right of action: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right of action; (3) whether a private right of action would be consistent with the purposes of the statute; and (4) whether the cause of action is one not traditionally relegated to the states."  *Conboy*, 241 F.3d at 252 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)).  The critical issue under this test is the second prong—whether Congress intended to create a private right of action—and "[t]he person seeking a private remedy bears the burden of demonstrating that Congress intended to make one available."  *N.Y.C. Envtl. Justice Alliance v. Giuliani*, 214 F.3d 65, 73 (2d Cir. 2000) (citation omitted).

Section 407 of the SSA exempts Social Security payments from garnishment.  *See* 42 U.S.C. § 407.  Section 407 does not, however, expressly create a private right of action, and "none of the 13 courts of appeals has decided whether the judiciary should create a private right of action to enforce § 407(a) through an award of damages."  *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 969 (7th Cir. 2012) (collecting cases).  For this Court to hold that § 407 creates such a private right of action, Jordan would need to demonstrate that Congress intended to make a private right of action available, so as to overcome the presumption against implied rights of action.  *See Bellikoff*, 481 F.3d at 116; *N.Y.C. Envtl. Justice Alliance*, 214 F.3d at 73.

Jordan has not met this burden—she has not attempted to demonstrate that Congress intended to create a private right of action for § 407 or its implementing regulations.  And the Court has not found any authority supporting the existence of such a right.  Therefore, to the

extent the Amended Complaint can be read to allege a violation of § 407, it fails to state a claim and cannot be the basis for federal question jurisdiction under 28 U.S.C. § 1331.

To the extent that Jordan appears to allege a violation of § 1673 of the CCPA, the same reasoning bars her claim.  A number of courts, in fact, have held that § 1673 "does not contemplate a private right of action by an individual debtor," but rather vests enforcement authority for the subchapter in the Secretary of Labor.  *Pressman v. Neubardt*, No. 02 Civ. 8404 (RCC), 2002 WL 31780183, at *2 (S.D.N.Y. Dec. 12, 2002); *accord Steele v. Steele*, No. 10 Civ. 40 (KSF), 2011 WL 2413400, at *5 n.1 (E.D. Ky. June 10, 2011) ("§ 1673 does not create a private right of action, as the legislative history contains no explicit reference to the denial or creation of a private right of action, but did state that enforcement of garnishment provisions of sub-chapter is vested in the Secretary of Labor." (internal quotation marks and citations omitted)); *Martin v. Sup. Ct. of the State of N.Y.*, 644 F. Supp. 1537, 1543 (N.D.N.Y. 1986) ("If the garnishment exceeds the permissible limits provided in § 1673 as asserted in plaintiffs' complaint, Mr. Martin may seek modification of this garnishment in state court. This statute does not confer subject matter jurisdiction on a federal court over such a claim."); *see also McCabe v. City of Eureka, Mo.*, 664 F.2d 680, 683 (8th Cir. 1981) (no private right of action under a provision in the same subchapter, 15 U.S.C. § 1674(a)).

Because § 1673 does not create a private right of action, it cannot form the basis for subject matter jurisdiction under 28 U.S.C. § 1331.  *See Pressman*, 2002 WL 31780183, at *2.

### 2.      Jordan's Claims of Discrimination

Jordan alternatively alleges that the Chase Defendants and Deutsche Bank discriminated against her in connection with the refinancing of her mortgage, the foreclosure of the Florida property, and the garnishment action.  The Amended Complaint can be read to claim that these

purported discriminatory acts were in violation of three federal laws: the Emergency Economic Stabilization Act of 2008 (particularly, the Home Affordable Modification Program ("HAMP")); the FHA; and the CCPA (particularly, the Equal Credit Opportunity subchapter).  Am Compl. at 14–19.  As to none of these, however, does the Amended Complaint state a claim.

### a.      HAMP

HAMP is a U.S. Department of the Treasury program codified within the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201–5261.  The law is clear that HAMP "does not create a private right of action for borrowers against loan servicers."  *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013); *accord Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (no express or implied private right of action under HAMP); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n. 4 (7th Cir. 2012) ("HAMP does not create a private federal right of action for borrowers against servicers.").  Jordan has not shown to the contrary; the Court is aware of no contrary authority.  HAMP, therefore, cannot provide a basis for federal question subject matter jurisdiction.  *See id.*

### b.      The FHA

Section 3605 of the FHA prohibits discrimination against handicapped persons in the availability and the terms and conditions of residential real-estate transactions.  *See* 42 U.S.C. § 3605.  Unlike HAMP, the FHA expressly provides a private right of action for enforcement of its provisions.  *See id.* § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach.").  The Amended Complaint, however, fails to state a claim under the FHA.

The Amended Complaint's allegations relevant to this claim are as follows:  The Chase Defendants "expressed concerns and biases" with respect to Jordan's refinancing application, particularly as to the reliability of her disability income, Am. Compl. at 15; and when Jordan later sought to modify her mortgage, the Chase Defendants failed to disclose all options available to her "due to their discriminatory animus" towards her as a disabled person, *id*. at 16.  The Chase Defendants and Deutsche Bank took these steps with the goal of removing Jordan from her home, because she was disabled; in contrast, defendants, during the same period, modified loans with non-disabled persons to prevent foreclosures.  *Id.*  The garnishment action against Jordan was commenced on January 19, 2012, *id.* at 18; during the ensuing proceedings, the Chase Defendants failed to put in escrow and release exempt funds to Jordan, again, as a result of their "long biases against [Jordan] as a disabled person." *Id.* at 19.  Finally, after the foreclosure, the Amended Complaint alleges, defendants, acting out of discriminatory animus, downgraded her account status and treated her as an inferior customer, dissolved an overdraft line of credit without notice, and (following service of the initial Complaint in this case) notified credit bureaus that Jordan had exceeded her credit card limit.  *Id.* at 25–26.

The Amended Complaint can thus be read to allege FHA violations at the refinancing, foreclosure, post-foreclosure, and garnishment stages of Jordan's relationship with Chase. However, the claims related to the first two areas of conduct, refinancing and foreclosure, are untimely.  Under the FHA, "a person 'may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach.'"  *Adams v. Han*, 478 F. App'x 686, 687 (2d Cir. 2012) (quoting 42 U.S.C. § 3613(a)(1)(A)).  The refinancing of Jordan's mortgage was

completed in September 2006; the foreclosure of the Florida property occurred in August 2009. Am. Compl. 16–17.  The initial complaint in this action, however, was filed on December 19, 2013, Dkt. 1, more than four years after the foreclosure, and more than seven years after the refinancing.  Therefore, Jordan's FHA claims, to the extent they are based on the refinancing and the foreclosure, are untimely.

Jordan, in her Amended Complaint, argues that equitable tolling of the FHA's timeliness restriction is merited here, due to defendants' "ongoing pattern of bad faith, intentional misrepresentation, discrimination, deception and retaliation," and the fact that Jordan was "[d]isabled, known to have Multiple Sclerosis," and was "seriously ill at various points throughout the last seven or so years, with periods of incompetency."[4]  Am. Compl. at 3. Equitable tolling is "an extraordinary measure that applies only when [a] plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."  *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004); *see also Haekal v. Refco Inc.*, 198 F.3d 37, 43 (2d Cir. 1999).  The burden of proving that tolling is appropriate rests with the plaintiff.  *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) (citation omitted).  Here, while the Amended Complaint does allege "bad faith, intentional misrepresentation," and "deception" by defendants, Am. Compl. at 3, it fails to allege any specific ways in which actions by defendants misled Jordan to make her unaware that she had suffered an injury for which she could seek a remedy at law.  Nor does Jordan state when, precisely, she became aware of her claims.  Likewise, while the Amended Complaint describes Jordan's medical conditions, *id.*, it does not detail any manner in which

---

[4] Although Jordan raises the issue of equitable tolling in the section of her Amended Complaint alleging breach of contract, the Court, construing the Amended Complaint liberally, addresses the issue of equitable tolling in relation to each claim that the Court finds untimely.

those conditions prevented her from filing claims in a timely manner under the statute.
Accordingly, the Court finds that equitable tolling is inappropriate.  *See Grimes v. Fremont Gen.
Corp.*, 785 F. Supp. 2d 269, 291–94 (S.D.N.Y. 2011) (equitable tolling of FHA and § 1691
claims denied where plaintiffs failed to allege concealment of the existence of their claims by
defendants or the time when they became aware of the claims); *Barkley v. Olympia Mortgage
Co.*, No. 04 Civ. 875 (RJD) (KAM), 2007 WL 2437810, at *17 (E.D.N.Y. Aug. 22, 2007)
(equitable tolling of FHA claim denied where plaintiffs failed to "identify the date or dates by
which they knew about their Fair Housing Act claims").

Jordan's claims based on the Chase Defendants' post-foreclosure and garnishment
conduct fail to state a claim for different reasons.  The FHA, as relevant here, governs
"residential real estate-related transactions"; it defines such a transaction as "(1) The making or
purchasing of loans or providing other financial assistance—(A) for purchasing, constructing,
improving, or maintaining a dwelling; or (B) secured by residential real estate," as well as "(2)
The selling, brokering, or appraising of residential real property."  42 U.S.C. § 3605.  The
Amended Complaint, however, does not allege any such transaction, at least not in connection
with the defendants' post-foreclosure activities.  Rather, those activities relate to Jordan's retail
banking relationship with Chase, and are independent of her mortgage or any other real estate
transactions.  Am. Compl. at 25–26.  And the allegations with respect to the garnishment action
are also plainly unrelated to any real estate transactions.  Jordan protests defendants' alleged
lapses in the performance of their duties as garnishees.  *See id.* at 18–25.  Because the Amended
Complaint does not allege post-foreclosure or garnishment-related conduct by defendants that
constituted, or implicated, a "residential real estate-related transaction," those aspects of the

Amended Complaint, too, fail to state a claim under the FHA.  *See Pandozy v. Segan*, 518 F. Supp. 2d 550, 557 (S.D.N.Y. 2007).

Accordingly, the Amended Complaint fails to state a claim under the FHA, and that statute cannot be used as a basis for federal question jurisdiction.

### c.  The CCPA

The Equal Credit Opportunity subchapter of the CCPA prohibits, *inter alia*, discrimination against any applicant with respect to any aspect of a credit transaction based on the fact that all or part of the applicant's income derives from any public assistance program.  15 U.S.C. § 1691(a)(2).  Section 1691 also prohibits retaliation for the good faith exercise by an applicant of any right under the CCPA, and adverse actions against an applicant without notice or explanation.  *See id.* §§ 1961(a)(3) & (d).  Like the FHA, there is a private right of action to pursue violations of § 1691.  *See id.* § 1691e(a) ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class.").

However, there is a time limit within which an aggrieved party may bring such a suit.  The statute provides that no action under it "shall be brought later than 5 years after the date of the occurrence of the violation."  *Id.* § 1691e(f).  Under that provision, Jordan's lawsuit, to the extent it is directed at conduct in connection with the refinancing of her mortgage, is untimely.  As noted, that refinancing was completed in September 2006, Am. Compl. at 16, whereas the initial complaint in this action was filed on December 19, 2013, more than seven years later, Dkt. 1.  Therefore, Jordan's § 1691 claims relating to the refinancing are untimely.  *See Grimes*, 785

17

F. Supp. 2d at 295.  And, for the same reasons that equitable tolling is unavailable for Jordan's FHA claim, equitable tolling is likewise unavailable for Jordan's § 1691 claims.

As to Jordan's § 1691 claims with respect to the foreclosure and the garnishment action, the Amended Complaint fails to state a claim.  To state a claim for discrimination under § 1691, a complaint must plead facts with "the requisite specificity needed to support a claim of discrimination under either a discriminatory intent or discriminatory impact theory."  *Burrell v. State Farm Fire & Cas. Co.*, No. 00 Civ. 5733 (JGK), 2001 WL 797461, *11 (S.D.N.Y. July 12, 2001).  Generic or conclusory allegations will not do:  It is not enough for a complaint to "simply state[] that the defendants discriminated against the plaintiff[] without describing specific acts that would give rise to an inference of discriminatory intent."  *Id.* at *10.

Here, the Amended Complaint's allegations of discrimination by defendants—whether before the foreclosure, after it, or during the garnishment action—are utterly conclusory.  The Amended Complaint does not supply any factual support for them.  Instead of pleading specific facts, it claims that "[i]t would be almost impossible NOT to conclude that Chase Defendants operated with a bias against Plaintiff as a disabled person," Am. Compl. at 25, and that defendants' conduct "reveals a deep bias and more recently, retaliation in return for reporting that bias, that is most likely explained by her Disability status," *id.* at 26.  These threadbare conclusions are far short of the mark; they do not state a claim for discrimination under § 1691.  *See D. Carlyle Int'l LLC v. J.P. Morgan Chase & Co.*, No. 10 Civ. 6039 (RMB), 2011 WL 1676049, *4 (S.D.N.Y. Apr. 26, 2011) (dismissing "unwarranted factual inferences and legal conclusions" of discrimination and retaliation in violation of § 1691 for failure to state a claim).

Jordan does, separately, bring a claim under § 1691(d) of the statute.  That provision requires that each credit applicant "against whom adverse action is taken shall be entitled to a

statement of reasons for such action from the creditor"; this may be satisfied by either "providing statements of reasons in writing" or "giving written notification of adverse action" that discloses "the applicant's right to a statement of reasons" and "the identity of the person or office from which such statement may be obtained." 15 U.S.C. § 1691(d). "Adverse actions" are defined in § 1691(d)(6) to include, *inter alia*, "a denial or revocation of credit," and "a change in the terms of an existing credit arrangement." *Id.* § 1691(d)(6).

As to this claim, however, the Amended Complaint alleges only the following, in a single sentence: that the Chase Defendants "[d]issolved [Jordan's] overdraft Line of Credit without Notice, opening her up to various penalties and fees and damaging her credit." Am. Compl. at 25. This perfunctory allegation is conclusory. It is devoid of particularity. It does not state when, or how, Chase dissolved Jordan's overdraft line of credit. It does not explain what the penalties, fees, and damaged credit to which it refers are. And it does not recite how, if not by means of a writing, the cancellation of this line of credit was made known to Jordan. The Court, therefore, dismisses this claim, too, for failure to state a claim.

On the basis of this pleading, however, it does appear possible that a claim of a violation of § 1691(d) could be properly stated. The Court will, therefore, permit Jordan to file a Second Amended Complaint. Should Jordan seek to do so, and to premise federal jurisdiction on an asserted violation of §1691(d), she is admonished that she must supply more detailed factual allegations as to the alleged dissolution of her overdraft line of credit, so as to enable the Court to determine whether or not a claim of a violation of that statute has been adequately pled.

### C.      Remaining State Law Claims

Having dismissed Jordan's federal law claims, the Court must determine whether to exercise supplemental jurisdiction over her remaining claims against defendants, brought under New York and Florida statutes and common law.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (citing *Cohill*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of the Court's exercising supplemental jurisdiction over Jordan's state law claims for breach of contract, coercion, fraudulent and negligent misrepresentation, and fraudulent inducement during the refinancing, before and after the foreclosure, and in the garnishment action.  *See* Am. Compl. at 2.  The Court has not invested

the resources necessary to resolve these non-federal claims, nor do convenience, fairness, and comity require the Court to exercise supplemental jurisdiction.  The Court accordingly declines to exercise supplemental jurisdiction over these claims.  These claims are dismissed without prejudice.

## CONCLUSION

Because it does not recite an adequate basis for federal jurisdiction, and because there is no reason for the Court at this stage to exercise supplemental jurisdiction over Jordan's state-law claims, defendants' motion to dismiss Jordan's Amended Complaint is granted.  The Clerk of Court is directed to terminate the motion at docket number 29, and to close the case.

As noted, however, this dismissal is without prejudice to Jordan's right to file a Second Amended Complaint, this time stating a legally adequate basis for federal jurisdiction, whether under 15 U.S.C. § 1691(d) or otherwise.  Jordan may also include her state-law claims in the Second Amended Complaint; if necessary, the Court will reassess whether exercising supplemental jurisdiction is appropriate.  Should Jordan seek to pursue her claims in federal court, she must file any such Second Amended Complaint within 60 days of the date, below, of this Opinion and Order.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 31, 2014
          New York, New York